UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILOMENA LAMBAKIS,  : CIVIL NO: 1:19-CV-01496
         :
    Plaintiff,  : (Chief Magistrate Judge Schwab)
         :
   v.    :
         :
         :
ANDREW SAUL,    :
Commissioner of Social Security, :
         :
    Defendant.  :
         :

## MEMORANDUM OPINION

### I.  Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The plaintiff, Filomena Lambakis, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision will be vacated, and the case will be remanded to the Commissioner for further consideration.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 4-1* to *4-18*.[1]  In December 2016, Ms. Lambakis filed an application for Disability Insurance Benefits and an application for Supplemental Security Income contending that she became disabled on January 1, 2005. *Admin. Tr.* at 276–86. After the Commissioner denied Ms. Lambakis's claims at the initial level of administrative review, Ms. Lambakis requested an administrative hearing. *Id.* at 221–22.  On June 25, 2018, Administrative Law Judge ("ALJ") Richard Guida held a hearing at which Ms. Lambakis and a vocational expert testified. *Id*. at 153–80.  At the hearing, Ms. Lambakis, through her counsel, amended the alleged onset date of her disability to March 16, 2016. *Id*. at 174.

By a decision dated October 9, 2018, the ALJ determined that Ms. Lambakis was not disabled from March 16, 2016, through the date of his decision, and so he denied her benefits. *Id*. at 33.  Ms. Lambakis appealed the ALJ's decision to the Appeals Council, which denied her request for review on June 26, 2019. *Id*. at 1–4. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this court.

---

[1]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Ms. Lambakis's claims.

In August of 2019, Ms. Lambakis began this action by filing a complaint claiming that the ALJ erred and requesting that the court reverse the Commissioner's decision and award her benefits and such other relief as is justified. *Doc. 1.* The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs. 3, 4.* The parties, who consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), have filed briefs, and this matter is ripe for decision. *Docs. 10–12.*

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

3

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Ms. Lambakis is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[2]  Unlike with disability

---

[2]  "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the

insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

In determining whether the claimant is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  RFC is "that which an individual

---

ALJ determined that Ms. Lambakis met the insured-status requirements through December 31, 2020. *Admin. Tr.* at 21.

is still able to do despite the limitations caused by his or her impairment(s)."
*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations
omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e),
416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's
medically determinable impairments, including any non-severe impairment
identified by the ALJ at step two of his or her analysis. 20 C.F.R.
§§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the
sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d
Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner,
who must . . . show there are other jobs existing in significant numbers in the
national economy which the claimant can perform, consistent with her medical
impairments, age, education, past work experience, and residual functional
capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive
requisites.  Most significantly, the ALJ must provide "a clear and satisfactory
explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642
F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which
evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson*

*v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "the

reviewing court cannot tell if significant probative evidence was not credited or

simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).


## IV.  The ALJ's Decision Denying Ms. Lambakis's Claims.

On October 9, 2018, the ALJ denied Ms. Lambakis's claims for benefits.

Applying the sequential-evaluation process, the ALJ determined that Ms.

Lambakis was not disabled within the meaning of the Social Security Act.

At step one of the sequential-evaluation process, the ALJ found that Ms.

Lambakis has not engaged in substantial gainful activity since March 16, 2016 (her

amended alleged onset date). *Admin. Tr.* at 23.[3]

At step two of the sequential-evaluation process, the ALJ found that Ms.

Lambakis has the following severe impairments: degenerative disc disease,

osteoarthritis of the knees, generalized anxiety disorder, major depressive disorder,

and post-traumatic stress disorder ("PTSD"). *Id.*  He also determined that Ms.

---

[3] Ms. Lambakis testified that she works at an Italian restaurant taking orders at the counter, answering the phone, and making cold sandwiches. *Admin. Tr.* at 157–58. But she works only part-time. *Id.* at 157.

Lambakis has thyroid nodules, stress incontinence, sinusitis/chronic pansinusitis, mild bilateral sensorineural hearing loss, and bilateral carpal tunnel syndrome, but he concluded that those impairments are non-severe impairments. *Id*. at 24.

At step three of the sequential-evaluation process, the ALJ found that Ms. Lambakis does not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 24–27.  More specifically, the ALJ discussed Listing 1.02 (Major dysfunction of a joint(s) (due to any cause)) with respect to Ms. Lambakis's knee impairments and Listing 1.04 (Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord) with respect to the impairments of Mr. Lambakis's lumbar spine, cervical spine, and thoracic spine. *Id*. at 24–25. With respect to Ms. Lambakis's mental impairments, the ALJ considered Listing 12.04 (Depressive, bipolar and related disorders) and Listing 12.06 (Anxiety and obsessive-compulsive disorders). *Id*. at 25–27.

After finding that Ms. Lambakis's impairments did not meet or equal a listing, the ALJ assessed Ms. Lambakis's RFC.   The ALJ found that Ms. Lambakis had the RFC to perform light work except that she is "limited to up to

9

frequent postural movements," "no more than occasional ladders, ropes, scaffolds, and stooping," no "concentrated exposure to vibration," and "[s]he is limited to simple, routine tasks involving only simple work related decision[s] with few, if any, workplace changes. *Id.* at 27.

In making the RFC assessment, the ALJ reviewed Ms. Lambakis's assertions and testimony regarding her impairments and symptoms. *Id.* at 28. He found that Ms. Lambakis's medically determinable impairments reasonably could be expected to cause her alleged symptoms. *Id.* But he found that Ms. Lambakis's statements regarding the "intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." *Id.*

As to Ms. Lambakis's physical impairments, the ALJ reviewed the medical records—some of which support Ms. Lambakis's assertions regarding the severity of her symptoms and some of which, the ALJ suggests, do not. *Id.* at 28–29. Similarly, as to Ms. Lambakis's mental impairments, the ALJ reviewed the medical records, noting that she "was assessed with clinical examination findings of a dysphoric affect, a dysthymic mood, a somewhat impaired recent and remote memory, and a sad and depressed mood," but that she was also "assessed with clinical examination findings of a euthymic mood, an appropriate affect,

10

appropriate eye contact, normal motor behavior, clear speech, adequate expressive

and receptive language skills, a coherent thought process, clear sensorium, and

good insight and judgment." *Id*. at 29 (citations to the record omitted).  The ALJ

also concluded that although the fact that Ms. Lambakis received mental health

therapy and was prescribed psychotropic medication, "provides some support for

her allegations regarding her symptoms and limitations pertaining to her mental

impairments," other evidence cited "indicates she does not experience symptoms

or limitations related to her mental impairment with either the intensity or

persistence that she suggested." *Id*. at 29–30.  Similarly, the ALJ concluded that

Ms. Lambakis's "medical records on a longitudinal basis" are not consistent with

the degree of limitation in activities of daily living alleged by Ms. Lambakis. *Id*. at

30.

Although Ms. Lambakis "alleged experiencing medication side effects of

dizziness and drowsiness," the ALJ concluded that her medical records do not

support a finding that she experiences "medication side effects with such intensity

or persistence that they would preclude her from performing jobs consistent with"

the RFC he set forth. *Id*.

The ALJ also considered the opinion evidence.  He gave "little weight" to

the state agency psychological consultant's opinion that Ms. Lambakis's mental

impairments are non-severe impairments because that opinion "is not consistent with the entirety of the objective evidence pertaining to the claimant's mental impairments, including some abnormal clinical examination findings." *Id.* at 31. And he gave "little weight" to Ms. Lambakis's primary care physician's opinion that she was disabled from March 2009 through 2015, because that opinion does not relate to the relevant time period. *Id.*[4]

That ALJ gave "great weight" to the State agency medical consultant's "physical residual functional capacity assessments that indicate[] the claimant is capable of performing a range of work at the light exertional level that includes postural limitations and an environmental limitation." *Id.* (citation to the record omitted). The ALJ concluded that those opinions "are consistent with clinical examination findings of a normal gait, normal station, normal balance, 5/5 strength of the upper extremities and lower extremities, a normal posture, no muscle atrophy, and normal range of motion of the hips." *Id.*

The ALJ gave "some weight" to the opinion of Dr. Kneifati, a consultative examiner. *Id.* at 30. He found Dr. Kneifati's opinion that Ms. Lambakis could lift/carry up to 20 pounds consistent with his RFC. *Id.* But he concluded that "Dr. Kneifati's sit/stand/walk limitations do not correspond to the mild/moderate MRI

---

[4] As set forth above, Ms. Lambakis's counsel amended the alleged onset date of disability from January 1, 2005, to March 16, 2016.

findings." *Id*. (citation to the record omitted). The ALJ also concluded that "Dr. Kneifati's positive straight leg raising notations do not correspond to treatment records indicating normal straight leg raising" and his notation of carpal tunnel syndrome as one of the reasons for his "sit/stand/walk limitations is not logical as hand abnormalities do not affect sit/stand/walk." *Id*.  The ALJ did give "great weight" to Dr. Kneifati's opinion that Ms. Lambakis has no hand limitations "as it matches his normal hand findings upon examination." *Id*. at 31.

The ALJ gave "little weight" to the opinion of "Steve Broker, M.P.T., a physical therapist who performed a functional capacity evaluation" of Ms. Lambakis and who opined that she could work either at the sedentary-exertional level or part-time at the light-exertional level. *Id*.  The ALJ explained that he gave "little weight" to Broker's opinion "because it is not consistent with the entirety of the objective evidence of record, including clinical examination findings of a normal gait, normal station, normal balance, 5/5 strength of the upper extremities and lower extremities, a normal posture, no muscle atrophy, and normal range of motion of the hips." *Id*.

The ALJ gave "moderate weight" to the opinion of Dr. Plowman, a consultative psychologist who completed a mental status evaluation of Ms. Lambakis on March 16, 2017, and who completed a Medical Source Statement of

13

Ability to do Work-Related Activities (Mental). *Id*. at 30, 772–779.  The ALJ

found Dr. Plowman's opinion "consistent with the claimant's medical records on a

longitudinal basis, including clinical examination findings of a euthymic mood, an

appropriate affect, appropriate eye contact, normal motor behavior, clear speech,

adequate expressive and receptive language skills, a coherent thought process,

clear sensorium, and good insight and judgment; notations by a physical therapist

that indicate she was pleasant and cooperative and was able to follow instructions

and maintain a conversation adequately throughout the evaluation; and

observations of a field office representative of the Social Security Administration

indicating the claimant exhibited no difficulty pertaining to understanding,

coherency, talking, answering, or concentrating." *Id*.

The ALJ gave "little weight" to the Mental Residual Functional Capacity

Assessment completed by Ted. A. Hummel, M.S., "a mental health therapist with

whom the claimant treated[.]" *Id*. at 31.  The ALJ concluded that Hummel's

opinion was "not consistent with the entirely of the evidence of record pertaining

to the claimant's mental impairments, including clinical examination findings of a

euthymic mood, an appropriate affect, appropriate eye contact, normal motor

behavior, clear speech, adequate expressive and receptive language skills, a

14

coherent thought process, clear sensorium, and good insight and judgment and the claimant's lack of persistent mental health therapy treatment." *Id*.

In sum, the ALJ found that Ms. Lambakis had the RFC to perform "a range of work at the light exertional level that includes postural limitations and an environmental limitation." *Id*.  "Furthermore, to accommodate some degree of the combined effects of the claimant's medication side effect (i.e. drowsiness) and mental impairments the [ALJ] . . . limited the claimant to work that entails simple, routine tasks involving only simple work related decision[s] with few, if any, workplace changes." *Id*. at 31-32.

At step four of the sequential-evaluation process, the ALJ found that Ms. Lambakis could not perform her past relevant work as a bank teller. *Id*. at 32.

At step five of the sequential-evaluation process, considering Ms. Lambakis's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were other jobs—such as information clerk, ticket taker, and potato chip sorter—that exist in significant numbers in the national economy that Ms. Lambakis could perform. *Id*. at 32–33.

In sum, the ALJ concluded that Ms. Lambakis was not disabled at any time from March 16, 2016 (her amended alleged onset date) through the date of his decision on October 9, 2018. *Id*. at 33.

## V.  Discussion.

Ms. Lambakis claims that the ALJ erred: (1) by failing to include in her RFC limitations from her degenerative disc disease, osteoarthritis of the knees, generalized anxiety disorder, major depressive disorder, and PTSD, which impairments the ALJ determined to be severe impairments; (2) by failing to include in her RFC: limitations from her stress incontinence and bilateral carpal tunnel syndrome, which impairments the ALJ determined to be non-severe impairments; and limitations from the meniscus tear in her right knee, disc bulge in her thoracis spine at T4-T5, cervical disc disease, bilateral pars defect at L5, and partial foraminal stenosis of the lumbar spine, which conditions, according to Ms. Lambakis, the ALJ did not even mention in his decision; (3) by not affording sufficient weight to the opinions of Ted Hummel, Steve Broker,[5] and Dr. Kneifati; and (4) by failing to consider the Grid Rules.  We begin by discussing Ms. Lambakis's contentions regarding the opinion of Ted Hummel.

---

[5]  Although Ms. Lambakis does not reference Broker by name, she contends that the ALJ should have given more weight than he did to the results of the Functional Capacity Evaluation performed on May 24, 2018, which is the evaluation performed by Broker. *See Doc. 10* (Lambakis's brief) at 19, 23–24; *Admin. Tr.* at 939–949 (May 24, 2018 Functional Capacity Evaluation by Broker).

**A. The ALJ's treatment of Ted Hummel's opinion is not supported by substantial evidence.**

Ms. Lambakis contends that the ALJ failed to properly consider the opinion of Ted Hummel.  Hummel completed a Mental Residual Functional Capacity Assessment dated May 16, 2008. *Admin. Tr.* at 868–872.  Among other things, Hummel opined that Ms. Lambakis had extreme limitations in the ability to ask for help when needed, the ability to state her own point of view, and the ability to manage her psychologically based symptoms. *Id*. at 870, 872.  He also opined that Ms. Lambakis had marked limitations in her ability to follow one-or-two step oral instructions to carry out a task; the ability to describe work activity to someone else; the ability to sequence/complete multi-step activities; the ability to use reason and judgment to make work-related decisions; the ability to handle conflict with others; the ability to respond appropriately to requests, suggestions, criticisms, correction, and challenges; the ability to complete tasks in a timely manner; the ability to ignore or avoid distractions; the ability to change activities or work settings without being disruptive; the ability to work close to or with others without interrupting or distracting them; the ability to work a full day without needing more than the allotted number or length of rest periods during the day; the ability to respond to demands; the ability to adapt to changes; the ability to distinguish between acceptable and unacceptable work performance; the ability to set realistic

17

goals; and the ability to make plans for herself independently of others. *Id*. at 869–72.[6]  Hummel also stated that Ms. Lambakis's impairment would substantially interfere with her ability to work on a regular and sustained basis at least 15% of the time and that she would miss work two days a month because of her mental impairments or treatment for those impairments. *Id*. at 872.  Hummel concluded that Ms. Lambakis could work part-time in a supportive environment. *Id*.  Suffice it to say that if the ALJ had accepted or given more weight to Hummel's opinions, the RFC that he fashioned for Ms. Lambakis would have included different and additional limitations.

Ms. Lambakis refers to Hummel as her treating source for her mental health. *Doc. 10* at 19.  And she contends that the ALJ failed to consider Hummel's opinions as a treating source. *Id*. at 23.  Parroting the reasons set forth by the ALJ, the Commissioner contends that the ALJ properly gave Hummel's opinion "little weight." *Doc. 11* at 13–14.  The Commissioner fails, however, to respond Ms. Lambakis's contention that Hummel's opinion should have been considered as a treating-source opinion.[7]  Given that the Commissioner does not dispute Ms.

---

[6]  Hummel also opined that Ms. Lambakis had moderate limitations in numerous other areas. *Admin. Tr.* at 869–72.

[7]  It should go without saying that the Commissioner should address the contentions raised by the plaintiff.

Lambakis's contention that Hummel is a treating source, we will consider him as such.[8]

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (applicable to claims filed before Mar. 27, 2017). "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). But "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d

---

[8] "A therapist is not an acceptable medical source." *Pelton v. Comm'r of Soc. Sec.*, No. 4:19-CV-1164, 2020 WL 2992041, at *5 (M.D. Pa. June 4, 2020). And "[o]pinions from non-acceptable medical sources are not entitled to controlling weight" as treating source opinions. *Id*. But a "licensed or certified psychologist" is an acceptable medical source. *Id*. (quoting 20 C.F.R. §§ 404.1502, 416.902). It is not clear from the record whether Hummel is a licensed or certified psychologist. But since the Commissioner does not contest Ms. Lambakis's characterization of him as a treating source, we will assume that he is. But even if Hummel cannot be considered to have provided a treating source opinion, for the same reasons discussed below, we would nevertheless conclude that the ALJ did not provide good reasons for according Hummel's opinion little weight.

310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  For claims—like Ms. Lambakis's claims—filed before March 27, 2017, the regulations provide that if "a treating source's medical opinions on the issue(s) of nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the Commissioner "will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).  Where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors including, the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at § 404.1527(c)(2)–(c)(6).

The regulations provide that opinions on issues reserved for the Commissioner—such as whether a claimant is disabled and a claimant's residual functional capacity—are not considered medical opinions under the regulations and are not entitled to any "special significance" based on the source of the opinion. 20 C.F.R. § 404.152(d).  Nevertheless, "[t]he ALJ must consider the

medical findings that support a treating physician's opinion that the claimant is disabled." *Morales*, 225 F.3d at 317.

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id*. at 317–18 (quoting *Plummer*, 186 F.3d at 429). The ALJ also may not disregard a treating physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'" *Id*. at 318 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)).

Further, the ALJ must "provide 'good reasons' in his decision for the weight he gives to a treating source's opinion." *Ray v. Colvin*, No. 1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)). "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. (quoting *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting in turn *Soc. Sec. Rul. 96–2p,* 1996 WL 374188, *5 (1996)).  Thus, the "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).  Remand is appropriate where the ALJ fails to adequately explain his or her reasons for rejecting relevant evidence. *Ray,* 2014 WL 1371585, at *18.

As set forth above, the ALJ concluded that Hummel's opinion was "not consistent with the entirely of the evidence of record pertaining to the claimant's mental impairments, including clinical examination findings of a euthymic mood, an appropriate affect, appropriate eye contact, normal motor behavior, clear speech, adequate expressive and receptive language skills, a coherent thought process, clear sensorium, and good insight and judgment and the claimant's lack of persistent mental health therapy treatment." *Id*.  We conclude that the ALJ did not provide good reasons for according Hummel's opinion "little weight."

The ALJ explains that he gave "little weight" to Hummel's opinion, in part, because it was not consistent with Ms. Lambakis's purported "lack of persistent mental health therapy treatment." *Id*.  But he does not explain what he means.  Nor

22

does he demonstrate that he was aware that for a time Ms. Lambakis was seeing Hummel on a bi-weekly basis. *Id*. at 868 (Hummel's Mental Residual Functional Capacity Assessment, which states that Ms. Lambakis began treatment on December 14, 2017, her treatment was bi-weekly, and her last appointment was on May 3, 2018).

The ALJ also contends that Hummel's opinion is not consistent with clinical examination findings, including findings of a "euthymic mood" and "an appropriate affect." *Id*. at 31. But the ALJ does not cite to the record to support his contentions that Hummel's opinion was not consistent with the clinical findings.  A couple of pages earlier in his decision, the ALJ sets forth the same list of clinical examination findings that he contends are inconsistent with Hummel's opinion. *Id*. at 29.  There he does cite to Exhibit 7F, which is Karen Plowman's Mental Status Evaluation of Ms. Lambakis on March 16, 2017. *Id*. at 29, 772-79.  Although the ALJ notes clinical examination findings of "euthymic mood" and "an appropriate affect," *Id*. at 29, 31, Plowman actually notes in her report that Ms. Lambakis's mood was "Dysthymic" and her affect was "Dysphoric." *Id*. at 774.  Thus, that

report does not support the ALJ's clinical examination findings of euthymic mood and an appropriate affect.[9]

Moreover, in rejecting Hummel's opinion, the ALJ set forth a "broad-brush conclusory summary of evidence that does not take into account evidence which is arguably supportive of the discounted opinion." *Rondina v. Saul*, No. 3:18-CV-215, 2019 WL 5569474, at *2 (M.D. Pa. Oct. 28, 2019).  He referred only to clinical findings that support his rejection of Hummel's opinion.  He does not address any of the evidence in the record that supports Hummel's opinion.  And the ALJ addresses Hummel's conclusions as to Ms. Lambakis's limitations in only the most conclusory manner.

In sum, the ALJ has not set forth good reasons for assigning "little weight" to Hummel's' opinion.  Thus, his decision is not supported by substantial evidence.

The question then is whether we should remand the case to the Commissioner for further proceedings or we should award benefits to Ms.

---

[9]  We note that there are references in the record to Ms. Lambakis having an euthymic mood and an appropriate effect. *See Admin. Tr.*  841, 849, 856.  These are notations from Dr. Knipe, who treated Ms. Lambakis for her lower back and leg pain. *Id*.  If these are the clinical findings to which the ALJ is referring, he did not make that clear.  Moreover, he did not adequately explain the probative effect of those isolated notations from a non-mental-health provider in the context of his discussion of Hummel's opinion.

Lambakis, as she requests. *See doc. 1* at 8 (requesting that benefits be awarded).
We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an

excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Ms. Lambakis's claim, and we cannot say that substantial evidence on the record as a whole indicates that Ms. Lambakis is disabled and entitled to benefits.  Rather, the ALJ's error here was failing to adequately explain his reasoning, which may be remedied on remand.  Thus, we will remand the case to the Commissioner for further proceedings.

### B.  Ms. Lambakis's Remaining Claims of Error.

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's handling of Hummel's opinion, we will not address Ms. Lambakis's remaining claims of error. *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016) (adopting Report and Recommendation of a magistrate judge that declined to address other allegations or error because "[a] remand may produce different results on these claims, making discussion of them moot").

26

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be vacated, and the case will be remanded to the Commissioner for further consideration.  An appropriate order follows.

**_S/Susan E. Schwab_**
Susan E. Schwab
Chief United States Magistrate Judge

27